## Operating Engineers Employers Association of Eastern Pennsylvania and Delaware v. Keystone Building Contractors Association

*John J. McAleese, Jr.* and *Charles V. Stoelker*, for plaintiff.

*J. Thomas Menaker*, for defendant.

WEINROTT, J., April 25, 1973.—At issue before the court is the construction of paragraph 9 of a writ-

ten contract between the parties. Paragraph 9 is as follows:

"The participation of the Association (defendants) in the Operating Engineers Employers may be terminated effective upon sixty (60) days written notice to the Secretary of the Operating Engineers Employers (plaintiff), except that no termination will be effective once negotiations have commenced with the Union."

In February of 1971, the parties entered into an agreement. That agreement provided that, in essence, the plaintiff would negotiate and make collective bargaining agreements with Local Union 542, International Union of Operating Engineers, for the defendants, among others, and that defendants would not negotiate individually with the union. Termination of that agreement was provided in paragraph 9, cited above. As a result of the agreement in question, plaintiff did, in fact, negotiate a labor contract on behalf of defendants with Local 542, International Union of Operating Engineers which expires by its terms April 30, 1974.

On January 19, 1973, defendant, Keystone Building Contractors Association, sent a letter to plaintiff in substance providing that Keystone wished to withdraw from the agreement and that they would negotiate with the union on their own. Defendant, General Contractors Association of Lehigh Valley, Inc., did substantially the same thing by letter dated February 21, 1973. On January 30, 1973, the union wrote a letter to plaintiff association listing demands to be considered during the ensuing negotiating period and requesting that a meeting take place for the purpose of negotiating a new contract commencing May 1, 1973. On February 28, 1973, plaintiff met with the union and at least on that date active negotiations began.

Because plaintiff had received the letters dated January 19, 1973, and February 21, 1973, indicating that

the respective defendants were attempting to negotiate individually, plaintiff on March 5, 1973, filed a motion for a temporary restraining order which was issued by Hirsh, J. Defendants filed preliminary objections attacking the jurisdiction of the court, and by order dated April 11, 1973, the preliminary objections were overruled by Hirsh, J., without opinion. The case was then assigned to the undersigned for adjudication on the merits.

At argument, defendants raised a question of venue, but we hold that since preliminary objections had been filed and the question of venue not included therein, that any such objection is waived.

The parties have stipulated to the inadequacy of a remedy at law and that any breach by defendants is not measurable in fiscal terms.

The question of law is a simple one in the construction of paragraph 9. It is not ambiguous on its face and we believe it is clear. Defendants have construed paragraph 9, we believe, to mean that the mere filing of a notice of purported termination would render the termination effective so long as the notice was 60 days prior to the alleged end of the agreement (April 30, 1973). That is to say according to defendants, so long as the notice was mailed prior to March 1, 1973, they argue that they could thereafter themselves bargain separately.

Such a construction is not in accordance with clear terms of paragraph 9. Mere notice does not make the withdrawal effective. Sixty days must elapse from the day of notice before the withdrawal is effective, and then only if no negotiations had taken place. This, we hold, is the clear import of paragraph 9. If, in accordance with defendants' argument, they had waited until March 1, 1973, to give notice to plaintiff, their

withdrawal could be effective on April 30, 1973, if no negotiations had taken place. We need not decide whether the letter dated January 30, 1973, from the union to plaintiff was a "negotiation" because we do hold that at least as late as February 28, 1973, negotiations had taken place.

Therefore, as to defendant Keystone, their effective date of withdrawal could have been March 19, 1973, so long as negotiations had not intervened between then and their letter of January 19, 1973.

So far as defendant General Contractors is concerned, their effective date of withdrawal could have been April 21, 1973, so long as negotiations had not intervened.

We believe that defendants' construction of paragraph 9 is unreasonable because it is almost an absolute certainly that as April 30, 1973, draws near, good faith negotiations would have begun, and that risk must be borne by defendants. As each day passes, that risk gets greater, and if withdrawal is desired, great diligence must be exercised so as not to run afoul or interfere with the orderly processes of good faith bargaining procedures. We need not concern ourselves with the argument that paragraph 9 could be construed to prevent any withdrawal by anyone simply by the expedient of scheduling a "negotiating" session every time a letter of purported withdrawal is received. The law implies good faith negotiations, and we find that good faith was exercised by plaintiff during this negotiating session. Furthermore, the latter argument runs contrary to fact; a party to an agreement with plaintiff exactly as is involved in the case at bar did give an effective notice of withdrawal and did, in fact, negotiate with the union individually. Of course, the negotiations

which are taking place will be the negotiation of a new contract commencing on or about May 1, 1973.

We, therefore, hold that defendants' contention that it was to be bound only for the two-year period ending in April of 1973, is without merit, and we dismiss the counterclaim. We also conclude that the parties and the subject matter are properly before this court, and that plaintiff is the exclusive authorized bargaining agent for both defendants for the contract, if any, to be negotiated for the time period commencing May 1, 1973.

Since the parties have stipulated that this matter be considered as a final hearing, we enter the following:

## FINAL DECREE

And now, to wit, April 25, 1973, it is ordered and decreed:

1. That defendants, and each of them, and each and every representative, agent, servant, officer, employe and attorney thereof, as well as any individual acting in concert therewith, shall refrain from communicating in any way, directly or indirectly, except through an authorized representative or agent, or authorized representatives or agents, of plaintiff, Operating Engineers Employers Association of Eastern Pennsylvania and Delaware, with any representative, agent, servant, officer, employe, official, or attorney of Local Unions 542, 542-A and 542-B, International Union of Operating Engineers, AFL-CIO, with a view toward bargaining in regard to any agreement, or any term or condition thereof, to become or to be operative for the contract, if any, negotiated subsequent to April 30, 1973.

2. That defendants' counterclaim is dismissed.

The prothonotary is ordered to notify all parties or their attorneys of the date of filing of this decree.